The undersigned have reviewed the award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some minor technical modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. At the time of the claimed contraction of an occupational disease, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. Goodwill Industries of Eastern North Carolina, Inc. was a self-insured employer.
4. Plaintiff's average weekly wage was $200.00.
5. The last day plaintiff worked for defendant was May 16, 1995 and she was paid her regular salary through May 30, 1995.
******************
Based upon all of the competent, credible, and convincing evidence in the record taken as a whole, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff began working for defendant on May 12, 1992. Her job primarily involved hanging and inspecting clothes which had been donated to the defendant by the public. The clothes would be scattered on a table along with plastic clothes hangers. She would hang an item on a hanger, inspect it for missing buttons, holes or other defects, and then hang it on a rack. There were clip hangers for skirts and pants as well as the regular shirt hangers. She was required to hang five hundred garments per day until some years later when the minimum number was raised to seven hundred garments per day.
2. One day per week, plaintiff would sort clothes instead of hanging them. That job involved emptying boxes or bags of clothes into a bin, lifting each item, inspecting it, and then placing it into the appropriate container. Once the container was full, she would take it to the sorting area and empty it onto the table.
3. During the last half hour of work, plaintiff would go out onto the sales floor where she would remove clothing from the rolling rack and hang it on an appropriate rack for sale to the public.
4. Prior to her employment with defendant, plaintiff had undergone surgery to each wrist for carpal tunnel syndrome. Dr. Jones treated her beginning in 1986 for pain and numbness in both hands. Initially, the symptoms were worse in her left hand, so he performed surgery to release the carpal tunnel in that hand on June 30, 1991, and her condition improved. In 1991 she returned with recurrence of her left hand pain and increasing symptoms in her right hand. After nerve conduction tests were performed, Dr. Jones determined that the symptoms in her left hand were more arthrogenic in nature rather than carpal tunnel syndrome, but that she clearly had carpal tunnel syndrome on the right. Consequently, he performed surgery to her right hand on July 30, 1991.
5. In 1994 plaintiff began to have increasing symptoms of pain and numbness in both hands. On January 19, 1995 she returned to Dr. Jones, who ordered nerve studies. He then diagnosed her condition as persistent, mild to moderate carpal tunnel syndrome, and he prescribed medication to try to manage her symptoms medically. She continued to complain of pain, however, so in June he offered her the option of surgery. Although she would have liked to have undergone the operations, defendant denied liability for her condition. As she did not otherwise have insurance, she had not had surgery as of the time Dr. Jones was deposed.
6. Plaintiff has asserted that her recurrent carpal tunnel syndrome resulted from her employment duties with defendant. However, her job duties involved a variety of movements consistent with normal activities of daily living. They were not the type of repetitive activities associated with the development of carpal tunnel syndrome. She was not placed at an increased risk of developing carpal tunnel syndrome by reason of her job duties with defendant as compared to the general public not so employed. In addition, her job activities were not a significant contributing factor in the development of her recurrent carpal tunnel syndrome.
7. Plaintiff has not sufficiently or convincingly proven by the greater weight of the competent, credible, and convincing evidence that she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed.
******************
The foregoing findings of fact and conclusions of law engender the following additional
CONCLUSION OF LAW
1. Plaintiff's recurrent bilateral carpal tunnel syndrome was not an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed. G.S. § 97-53
(13); Booker v. Duke Medical Center, 297 N.C. 458 (1979).
2. Plaintiff is not entitled to benefits under the Workers' Compensation Act for her recurrent carpal tunnel syndrome. G.S. § 97-2 et seq.
Based upon the foregoing findings of fact and conclusion of law, the undersigned enters the following
ORDER
1. This claim must, under the law, be and it is hereby DENIED.
2. Each side shall pay its own costs.
IT IS FURTHERMORE ORDERED that this case be REMOVED from the Full Commission hearing docket.
This the ______ day of _______________________, 1997.
 S/ ___________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ___________________________ LAURA K. MAVRETIC COMMISSIONER
S/ ___________________________ BERNADINE S. BALLANCE COMMISSIONER
JHB/nwm
09/17/97